**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOHN D. MCARTOR
7290 Highland Estates Place
Falls Church, VA 22043

*Plaintiff,*

v.

MARK GREEN, ADMINISTRATOR
US Agency for International Development
1300 Pennsylvania Ave., NW
Washington, DC 20523

*Defendant.*

Case No. ______________

**JURY TRIAL DEMANDED**

**COMPLAINT**

COMES NOW Plaintiff John D. McArtor ("Plaintiff") by and through his counsel, Morris E. Fischer, Esq., hereby submits the following Complaint, on information and belief formed after reasonable inquiry under the circumstances, against Defendant U.S. Agency for International Development Office of Inspector General ("Defendant").

**JURISDICTION, PARTIES, & EXHAUSTION**

1. This action is brought under the Age Discrimination in Employment Act 29 U.S.C. § 621 *et. seq.* ("ADEA").

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

3. Jurisdiction is based on Sections 4 and 7 of the ADEA, 29 U.S.C. §§ 623 and 626.

4. There is an actual controversy between Plaintiff and Defendant.

5. Plaintiff is an individual who resides at 7290 Highland Estates Place Falls Church, VA 22043.

6. Defendant is a federal agency located at 1300 Pennsylvania Ave., NW Washington, DC 20523.

7. Plaintiff timely filed his formal EEOC complaint for age discrimination on May 18, 2018 pursuant to 29 U.S.C. § 633a(d).[1]

8. The EEOC issued Plaintiff a right to sue letter.

9. Plaintiff received a right to sue letter from the EEOC on May 25, 2018 (Exhibit 1).

10. Plaintiff has exhausted all of his administrative requirements.

## FACTS

11. Plaintiff was born on September 27, 1965.

12. On November 14, 2016, Plaintiff had his first day of work for Defendant as Special Agent in the Office of Investigations.

13. Plaintiff worked for Defendant in its Office of Inspector General.

14. Plaintiff worked for Defendant in its Washington, DC location.

15. Jonathan Schofield is the Special Agent in Charge for Defendant in the Office of Investigations Division for Africa, Europe, and Latin America.

16. Laura Rousseau is the Assistant Special Agent in Charge for Defendant.

17. Eric Del Valle was a Special Agent for Defendant in the Office of Investigations.

18. Plaintiff independently met with Mr. Del Valle about work and sought him out as a resource.

---

[1] *Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003) (A federal employee "may bring a claim directly to federal court so long as, within 180 days of the allegedly discriminatory act, he provides the EEOC with notice of his intent to sue at least 30 days before commencing suit").

19. Mr. Schofield and Ms. Rousseau frowned upon Plaintiff's initiative in seeking out Mr. Del Valle's guidance.

20. Plaintiff formally met with Ms. Rousseau about every three months to conduct case reviews.

21. However, Plaintiff discussed his cases with Ms. Rousseau on a daily basis.

22. In or around March 3, 2017, Plaintiff signed and submitted the Completion of Assignment Report ("COAR") where he expressed interest in going to Frankfurt, Germany or Pretoria, South Africa as a Foreign Service Criminal Investigator in spring 2017.

23. On May 17, 2017, Mr. Schofield emailed Plaintiff his annual evaluation.

24. In the email to Plaintiff, Mr. Schofield told Plaintiff, "You did a lot in four months!"

25. On Plaintiff's annual evaluation, Mr. Schofield rated Plaintiff proficient and higher.

26. On September 27, 2017, Mr. Schofield sent an email to the entire USAID-OIG Investigations mailing list and praised the outcome of a big case, which had a positive press release.

27. Mr. Schofield said that he was pleased to report that USAID-OIG had its first Overseas Private Investment Corporation ("OPIC") related enforcement action in some time.

28. Plaintiff was the case agent for this case.

29. Plaintiff helped secure one criminal conviction and assisted in the arrest of a second suspect for this case.

30. On October 4, 2017, Mr. Schofield sent Plaintiff a memorandum.

31. That memorandum was about the negligent discharge of an official firearm.

32. The October 4, 2017 memorandum stated that the negligent discharge of an official firearm occurred on December 5, 2016 and April 18, 2017 while at familiarization training at an official firing range.

33. The October 4, 2017 memorandum directed Plaintiff to complete a forty hour remedial firearms course followed by a six-month training plan.

34. After Plaintiff's successful completion of the training plan, appropriate steps were to be taken to initiate Plaintiff's assignment abroad.

35. Plaintiff successfully completed the forty hours of firearms training on November 2, 3, 6, 13, 17, and 27, 2017.

36. Plaintiff successfully passed all firearm training scheduled during the six-month training plan.

37. On October 20, 2017, Plaintiff received an official email stating that he was assigned to work in Frankfurt, Germany.

38. The Germany detail is a prestigious assignment.

39. This was the second time that Plaintiff was selected to work in Frankfurt, Germany.

40. Plaintiff was selected to serve two consecutive two-year tours in Frankfurt, Germany, which were scheduled to start between April and June 2018.

41. On October 30, 2017, Mr. Schofield issued Plaintiff a work performance memorandum.

42. The October 30, 2017 work performance memorandum contended that Plaintiff lacked the fundamental understanding of his job requirements.

43. This was the first time that Plaintiff heard about work performance concerns.

44. On October 30, 2017, when Mr. Schofield gave Plaintiff the memorandum, he verbally advised Plaintiff to stop using Mr. Del Valle as a mentor.

45. Mr. Schofield then told Plaintiff to work with Ms. Rousseau on all of his cases.

46. Mr. Schofield advised Plaintiff to seek Ms. Rousseau's approval before proceeding with any case investigations.

47. Plaintiff had to obtain permission from Ms. Rousseau to send out work emails.

48. Mr. Schofield also said that Plaintiff had applied himself diligently to each of his cases and that he noted Plaintiff's work ethic and intent to succeed.

49. Mr. Schofield further said that Plaintiff did not grasp the elements of cases and he assigned additional cases to Plaintiff to work directly with Ms. Rousseau.

50. Ms. Rousseau was present during the meeting on October 30, 2017.

51. On December 7, 2017, Plaintiff attended remedial firearms training.

52. On December 15, 2017, Plaintiff found out that he passed the remedial firearms training.

53. On December 20, 2017, Mr. Schofield emailed Plaintiff and asked when he would like to transfer to Frankfurt, Germany.

54. Plaintiff responded saying that he could transfer within the set timeframe of April to June 2018.

55. Mr. Schofield said he would keep Plaintiff updated on status changes and that he hoped to make the cable request for the change soon.

56. On January 4, 2018, Plaintiff received a sensitive compartmented information indoctrination certificate.

57. This certificate provides him access to classified information on a need to know basis and greatly assists him in his investigations.

58. On January 5, 2018, Plaintiff passed remedial firearms training.

59. On January 16, 2018, Plaintiff emailed Ms. Rousseau about case priorities.

60. Ms. Rousseau responded to Plaintiff and gave him two prioritized cases.

61. One of those cases required immediate attention in the form of subject interviews and document retrieval.

62. Plaintiff needed Ms. Rousseau's permission to conduct the necessary witness interviews.

63. Ms. Rousseau did not allow Plaintiff to conduct a competent investigation for the immediate attention case.

64. Ms. Rousseau denied Plaintiff's request to obtain records and interview witnesses that were critical to the case.

65. Ms. Rousseau denied Plaintiff's request to obtain records and interview witnesses when he was already in the same location as those witnesses.

66. Later in January 2018, Ms. Rousseau had Plaintiff remotely obtain the records and interview some of the witnesses telephonically.

67. Ms. Rousseau did not allow Plaintiff to fully investigate the immediate attention case.

68. On January 17, 2018, Ms. Rousseau denied Plaintiff's submitted Individual Learning and Training Plan.

69. Every employee has an Individual Learning and Training Plan that the Special Agent in Charge or Assistant Special Agent in Charge signs and approves.

70. All employees have to have an Individual Learning and Training Plan.

71. The Individual Learning and Training Plan lists the trainings that employees are scheduled to take each fiscal year.

72. Plaintiff discussed his Individual Learning and Training Plan with Ms. Rousseau on multiple occasions and asked her to approve it.

73. Ms. Rousseau denied Plaintiff's request to take a Certified Fraud Examiner course.

74. Ms. Rousseau denied Plaintiff's request to take seven investigative training courses.

75. Ms. Rousseau only allowed Plaintiff to take firearms courses and short agency mandated on-line computer training courses.

76. Mr. Schofield never approved Plaintiff's Individual Learning and Training Plan.

77. Ms. Rousseau never approved Plaintiff's Individual Learning and Training Plan.

78. On January 18, 2018, Plaintiff passed remedial firearms training.

79. On February 9, 2018, Plaintiff took a firearms training course, which he passed.

80. On February 14, 2018, Mr. Schofield and Ms. Rousseau placed Plaintiff on a 60-day Performance Improvement Plan ("PIP").

81. The 60-day PIP stated that Plaintiff's essential work elements remained deficient because he had not demonstrated that he could independently manage a case load and perform required skills.

82. Before Mr. Schofield gave Plaintiff the PIP, he told Plaintiff that he was a team player and resilient with firearms issues.

83. Mr. Schofield told Plaintiff that he wished he could have more employees like Plaintiff.

84. Mr. Schofield also told Plaintiff that he could face removal from employment.

85. On February 14, 2018, when Mr. Schofield gave Plaintiff the PIP, he told Plaintiff that his Procurement Fraud Investigation Training Program class in March was being cancelled.

86. Plaintiff was scheduled to take the Procurement Fraud Investigation Training Program course from March 12 to 23, 2018.

87. The Procurement Fraud Investigation Training Program ("PFITP") course provides specialized training to personnel for specific investigative skills related to procurement fraud investigations.

88. On February 14, 2018, Mr. Schofield and Ms. Rousseau verbally told Plaintiff that he was not to attend the PFITP course.

89. Mr. Schofield said Ms. Rousseau would train Plaintiff.

90. Ms. Rousseau did very little to support or to provide Plaintiff with training.

91. Plaintiff regularly uploaded his case reports onto the electronic case management system called Consolidated Law Enforcement Records System ("CLERS") for Ms. Rousseau to review and approve.

92. Plaintiff had to frequently wait over six months for Ms. Rousseau to review and approve his uploaded case reports.

93. Plaintiff continuously followed-up with Ms. Rousseau about her review and approval of his uploaded case reports.

94. Ms. Rousseau sent Plaintiff back his case reports with minor edits.

95. Ms. Rousseau frequently missed external deadlines for reviewing and approving Plaintiff's case reports.

96. Plaintiff always gave Ms. Rousseau immediate responses to her edits.

97. During the 60-day PIP, Plaintiff met with Ms. Rousseau bi-weekly.

98. He always came prepared with case updates and investigation plans.

99. On February 22, 2018, Plaintiff took a firearms training course, which he passed.

100. In late February 2018, Plaintiff followed up with human resources about his move to Frankfurt, Germany.

101. On March 2, 2018, Plaintiff took a firearms training course, which he passed.

102. On March 6, 2018, Mr. Schofield berated Plaintiff.

103. Mr. Schofield was angry that Plaintiff reached out to human resources about the status of his move.

104. Mr. Schofield told Plaintiff that he has known since February 14, 2018, the day he received his 60-day PIP, that Mr. Schofield cancelled Plaintiff's move to Frankfurt, Germany.

105. The 60-day PIP did not state that Plaintiff's move to Frankfurt, Germany was cancelled.

106. Mr. Schofield told Plaintiff that his assignment to Frankfurt, Germany was being cancelled.

107. Mr. Schofield said that Plaintiff had not shown the aptitude to independently work in Frankfurt, Germany.

108. Mr. Schofield told Plaintiff that his attempts to get reassigned on a detail through the Completion of Assignment Report ("COAR") to Germany or South Africa was never going to happen because those were designed for newer employees.

109. Plaintiff was a newer employee.

110. Most new employees are between twenty-three and thirty years old.

111. On March 22, 2018, Plaintiff took a firearms training course, which he passed.

112. On April 4, 2018, Plaintiff took a firearms training course, which he passed.

113. On April 9, 2018, Plaintiff submitted a response to his February 14, 2018 60-day PIP.

114. On April 10, 2018, Mr. Schofield told Plaintiff that there were no plans to take any continued action against Plaintiff regarding his work performance.

115. About a month after Plaintiff passed the 60-day PIP, on May 11, 2018, Mr. Schofield asked Plaintiff if he still wanted to work for Defendant.

116. Mr. Schofield told Plaintiff to prepare his resume.

117. Several days later, on May 14, 2018, Ms. Rousseau issued Plaintiff a poor annual evaluation.

118. Ms. Rousseau issued Plaintiff the poor annual evaluation even though Plaintiff was complying with the PIP.

119. On June 5, 2018, Ms. Rousseau told Plaintiff's coworkers that he was a grandfather.

120. Plaintiff told Mr. Schofield that he was a grandfather, but that he did not want Mr. Schofield to tell anyone.

121. The average number of cases for investigators is four cases.

122. Plaintiff was assigned seven cases.

123. Plaintiff successfully worked on his seven cases and also assisted on other cases as needed.

124. Cases that Plaintiff has worked on have had successful results, such as over $2 million dollar settlements, criminal convictions, criminal arrests, removal of an employee's security clearance, and subsequent resignation in lieu of termination.

125. On September 26, 2017, Plaintiff successfully closed a case and completed it under strict deadlines set by Mr. Schofield and Ms. Rousseau.

126. Plaintiff's investigation uncovered a federal employee conducting personal business work on government resources.

127. For another case, in March 2017, Plaintiff sent Ms. Rousseau a Report of Investigation to review.

128. Plaintiff asked Ms. Rousseau numerous times for an update on the Report of Investigation.

129. On April 6, 2018, over a year after Plaintiff gave Ms. Rousseau a Report of Investigation to Review, Ms. Rousseau sent Plaintiff edits on the Report of Investigation.

130. On July 26, 2018, a case that Plaintiff worked on was published through the Department of Justice's website for its success.

131. Plaintiff achieved great success in some of his cases that other employees who had worked for Defendant longer than Plaintiff have never achieved.

132. When Mr. Schofield and Ms. Rousseau approved of them, Plaintiff successfully completed a variety of trainings.

133. Plaintiff mentored President Management Fellows.

134. One of those President Management Fellows that Plaintiff mentored was Tyler Owens.

135. Tyler Owens is substantially younger than Plaintiff.

136. Mr. Owens and other President Management Fellows have been sent away on lengthy temporary duty assignments.

137. The President Management Fellows had either just graduated from college or left the Army and were under thirty years old.

138. Defendant hired them as investigators.

139. Recently hired President Management Fellows are substantially younger than Plaintiff.

140. Plaintiff has more experience than the President Management Fellows.

141. Nyema Morais started working for Defendant around the same time as Plaintiff.

142. Mr. Morais is substantially younger than Plaintiff.

143. Plaintiff has more experience than Mr. Morais.

144. Defendant allowed Mr. Morais to transfer to Frankfurt, Germany.

145. Aaron Rodgers was hired months after Plaintiff.

146. Shortly after being hired, Mr. Rodgers was transferred to South Africa.

147. Plaintiff has more experience than Mr. Rodgers.

148. Mr. Rodgers is substantially younger than Plaintiff.

149. Mr. Rodgers was investigated for misconduct and he did not have the accomplishments that Plaintiff achieved.

150. Defendant never reprimanded Mr. Rodgers.

151. Defendant never gave Mr. Rodgers low work performance reviews.

152. Christian Assad a Special Agent Investigator repeatedly missed deadlines for two reports and submitted them a year past their deadline, which held up a case that Plaintiff was assigned.

153. Defendant did not reprimand Mr. Assad or put him on a PIP.

154. Defendant promoted Mr. Assad.

155. Mr. Assad is substantially younger than Plaintiff.

156. Younger employees with less experience and achievements than Plaintiff were not scrutinized on their planned investigations.

157. On July 9, 2018, Defendant terminated Plaintiff.

**COUNT I**
**(AGE DISCRIMINATION IN VIOLATION OF THE ADEA- 29 U.S.C. § 623)**

158. Plaintiff incorporates and re-alleges the prior allegations as if fully set forth herein.

159. This action is brought pursuant to the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, et. seq., for employment discrimination on the basis of age.

160. Plaintiff is over forty years old.

161. The aforesaid discriminatory treatment by Defendant toward Plaintiff caused tangible harm to Plaintiff in that they affected the terms, conditions, and privileges of his employment.

162. Among other things, the PIP was an adverse action that directly led to Plaintiff's termination.

163. Other similarly situated employees not of Plaintiff's age group were not subject to the same conditions of employment as Plaintiff.

164. A causal connection exists between Defendant's aforesaid actions and Plaintiff's age.

165. Plaintiff's age was a motivating factor in giving him the PIP.

166. Plaintiff's age was a motivating factor in terminating him.

167. Plaintiff's age was a motivating factor in its adverse actions toward him.

168. Defendant's aforementioned conduct and statements directly reflects on a discriminatory attitude toward Plaintiff.

169. Defendant's actions constituted a violation of Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et. seq.*

170. In addition to the above, Plaintiff has suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other damages.

171. Defendant's conduct was malicious, willful, and intentional.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Agency as follows:

a. All backpay and economic damages;

b. Attorneys' fees;

c. Costs and interest;

d. And any other relief the Court may deem proper.

Dated: August 20, 2018 Respectfully Submitted,

/s/ Morris E. Fischer
Morris E. Fischer, Esq.
DC Bar No. 490369
Morris E. Fischer, LLC
8720 Georgia Avenue
Suite 210
Silver Spring, MD 20910
Morris@mfischerlaw.com
(301) 328-7631 phone
(301) 328-7638 fax
*Attorney for Plaintiff*

**PLAINTIFF'S JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff by counsel herein serves his jury demand upon Defendant. Plaintiff herein demands a jury trial on all issues so triable.

Dated: August 20, 2018 Respectfully Submitted,

/s/ Morris E. Fischer
Morris E. Fischer, Esq.
DC Bar No. 490369
Morris E. Fischer, LLC
8720 Georgia Avenue
Suite 210
Silver Spring, MD 20910
Morris@mfischerlaw.com
(301) 328-7631 phone
(301) 328-7638 fax
*Attorney for Plaintiff*